UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MORGAN STANLEY SMITH BARNEY LLC WAGE AND HOUR LITIGATION<br><br>MDL 2280 | Civ. No. 2:11-03121 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This multidistrict litigation is made up of several putative wage and hour class actions alleging overtime violations and improper wage deductions on the part of Defendants Morgan Stanley Smith Barney LLC and Morgan Stanley & Co., Inc. (together "MSSB"). Now before the Court is MSSB's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the improper wage deductions claims only. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, MSSB's motion is **GRANTED IN PART**, and **DENIED IN PART**.

I.   FACTS

MSSB is a financial services firm. Amended Consolidated Class and Collective Action Complaint ("Compl.") ¶ 19, ECF No. 35. Plaintiffs are financial advisors who worked at MSSB during the period from 2008-2013. *Id.* ¶ 16. As MSSB financial advisors, Plaintiffs "pa[i]d for a significant portion of their postage expenses, client and prospective client dinners and seminars designed to obtain new clients and maintain existing clients." *Id.* ¶ 70. When it came to compensation, Plaintiffs were paid on a commission basis. *Id.* ¶ 52. The nature of Plaintiffs' commissions were set forth in annual compensation policies ("the Compensation Policies") sent to financial advisors by email in 2008-2013. *Id.* ¶ 55.

For present purposes, three features of the Compensation Policies stand out:

<u>First</u>, the Compensation Policies provided that financial advisors would receive commissions. Peker Aff., Exs. A-F, ECF No. 44. To calculate commissions, MSSB would apply a particular commission percentage to the amount of revenue a financial

1

advisor generated for MSSB. Monthly commission payments were described in the Compensation Policies as advances because they could, depending on a financial advisor's performance, be retroactively adjusted at the end of the year.

<u>Second</u>, under programs called the "Business Investment Threshold" ("BIT"), Peker Aff., Exs. A-B, and the "Automated Flexible Grid" (the "AFG"), Peker Aff., Exs. C-F—both of which were optional—financial advisors could provide bonuses to their assistants. Under the BIT, which operated from 2008-2009, a financial advisor would decide on a bonus amount for his or her assistant. When it came time to calculate the financial advisor's commission, MSSB would not apply the financial advisor's commission percentage to the amount of revenue the financial advisor generated. Instead, MSSB would apply the financial advisor's commission percentage to the revenue the financial advisor generated less the bonus allocated to the financial advisor's assistant. Under the AFG, which operated from 2010-2013, financial advisors would decide on a bonus for their assistants, and MSSB would use a lower commission percentage than it otherwise would to calculate the financial advisor's commission.

<u>Third</u>, the 2010-2013 Compensation Policies, and the 2009 Compensation Policy Addendum (together the "Compensation Documents"), permitted MSSB to make downward adjustments in compensation to reflect trading losses associated with a particular financial advisor. Peker Aff., Exs. C-G.

While Plaintiffs argue that the deductions for assistant bonuses and for trading errors were improper wage deductions, Plaintiffs never allege that the deductions violated the terms of the Compensation Policies or the 2009 Global Wealth Management Group Expense Policy ("the Compensation Documents"). Moreover, while Plaintiffs maintain that they never signed the Compensation Documents, Plaintiffs acknowledge that employees who objected to MSSB's deductions "ha[d] but one option—to leave MSSB." Compl. ¶ 68.

## II. PROCEDURAL HISTORY

Plaintiffs filed their Consolidated Class and Collective Action Complaint on February 14, 2012. ECF No. 17. That Complaint contained ten counts. Count I was an overtime claim under the Fair Labor Standards Act. Counts II, IV, VII, and IX, respectively, asserted overtime claims under New York, New Jersey, Rhode Island, and Connecticut law. Counts III, V, VIII, and X, respectively, asserted wage deduction claims under New York, New Jersey, Rhode Island, and Connecticut law. Finally, Count VI asserted a failure to maintain records claim under New Jersey law.

On March 30, 2012, MSSB moved to dismiss the Rhode Island overtime claim, the New Jersey failure to maintain records claim, and all of the wage deduction claims. ECF No. 19. The Court dismissed with prejudice the Rhode Island overtime claim and the New Jersey failure to maintain records claim. *In re Morgan Stanley Smith Barney LLC Wage and Hour Lit.*, No. 11-3121, 2012 WL 6554386, at \*\*2, 6 (D.N.J. Dec. 14, 2012). The Court dismissed the Rhode Island wage deduction claim with prejudice, and dismissed the additional wage deduction claims without prejudice. *Id.* at \*\*3-6. In dismissing the New York wage deduction claims, the Court noted that Plaintiffs' pleading said "nothing about the terms of their employment contract" with MSSB. *Id.* at \*3. Similarly, in its discussion of Connecticut law, the Court described Plaintiffs' claim as entirely "conclusory" because Plaintiffs failed to quote from Plaintiffs' contract with MSSB. *Id.* at \*5.

On January 28, 2013, Plaintiffs filed their Amended Consolidated Class and Collective Action Complaint asserting overtime claims and wage deduction claims. On March 29, 2013, Plaintiffs moved to dismiss the wage deduction claims only. ECF No. 42.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

A Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

"In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" *Banco Popular v. Ghandi*, 184 N.J. 161 (2003) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir.), *cert. denied*, 543 U.S. 918, (2004)). A document

3

forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." *Lum*, 361 F.3d at 222 n.3 (citing *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered. *See Burlington Coat Factory*, 114 F.3d at 1426. Here, the Court will consider MSSB's 2008-2013 Compensation Policies and the 2009 Global Wealth Management Group Expense Policy, which are "integral to or explicitly relied upon in the complaint." *Lum*, 361 F.3d at 222 n.3.

## IV. DISCUSSION

The Amended Complaint contains seven counts. MSSB moves to dismiss three of them: Counts III, V, and VII, namely the claims for improper wage deductions under New York, New Jersey, and Connecticut law. MSSB does not move to dismiss the other four Counts (Counts I, II, IV, and VI), which are overtime claims brought under the federal Fair Labor Standards Act and state law.

The next two sections address the improper wage deduction claims pled as Counts III, V, and VII. Each of the improper wage deduction claims proceeds under two theories: a direct deduction theory and an indirect deduction theory. "Direct deductions" refer to monies MSSB withheld from Plaintiffs. "Indirect deductions" refer to expenses incurred by Plaintiffs and not reimbursed by MSSB.

### A. Direct Deductions

Plaintiffs allege that MSSB violated New York, New Jersey, and Connecticut law when MSSB took two separate deductions from Plaintiff's compensation: deductions for assistant pay and deductions for trading errors. With one exception, Plaintiffs have not stated a direct wage deduction claim under New York, New Jersey, or Connecticut law.

With exceptions not applicable here, Section 193 of the New York Labor Law ("Section 193") provides that "No employer shall make any deduction from the wages of an employee." The term "wage" in Section 193 has a precise meaning. A "wage" is compensation that has been "earned." *Pachter v. Bernard Hodes Group*, 10 N.Y.3d 609, 617 (2008). Similarly, with exceptions not applicable here, Connecticut General Statutes Section 31-71(e) ("Section 31-71(e)") provides that "no employer may withhold or divert

any portion of an employee's wages . . . ." In Connecticut, a "wage" is compensation that has "accrued." *Mytych v. May Dept. Stores Co.*, 260 Conn. 152, 161-62 (2002). For purposes of the instant motion, Section 193, the New York statute, and Section 31-71(e), the Connecticut statute, appear to be indistinguishable. Finally, New Jersey law provides, with certain exceptions not applicable here, that "[n]o employer may withhold or divert any portion of an employee's wages." N.J.S.A. 34:11-4.4 ("Section 34:11-4.4"). Plaintiffs represent that "under New Jersey law, unless a specific contract provides otherwise, as in New York, a broker's commissions are 'earned' when the broker produces a buyer for securities and a sale of such securities takes place . . . ." Pls.' Br. at 27, ECF No. 50.

Under New York common law, "a broker who produces a person ready and willing to enter into a contract upon his employer's terms . . . has earned his commissions." *Pachter*, 10 N.Y.3d at 617 (internal quotation and citation omitted). New York allows parties to contract around the common law rule. *Pachter*, 10 N.Y.3d at 617. So does Connecticut. *See Mytych*, 260 Conn. at 162. And Plaintiffs argue that the same rule applies in New Jersey. Pls.' Br. at 27. As the New York Court of Appeals put it in *Pachter v. Bernard Hodes Group*, "[if the] computation of a commission . . . include[s] certain downward adjustments from gross sales, billings or receivables . . . the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula." *Pachter*, 10 N.Y.3d at 617-18.

In *Pachter*, Elaine Pachter coordinated media advertisements for various clients. Pursuant to an incentive arrangement with Pachter's employer, when Pachter arranged an advertisement, her client would pay a fee to Pachter's employer, and Pachter would receive a percentage of the fee, less particular charges (the "Charges"). The Charges included Pachter's travel and entertainment expenses, losses associated with errors in the advertisements, and, if Pachter wished to work with an assistant, some of the assistant's salary. *Id.* at 613.

When Pachter left the company, she brought suit under Section 193, arguing that the Charges were improper deductions from wages. New York's Court of Appeals disagreed. First, it held that Pachter had impliedly contracted around the common law rule governing when commissions become earned. Though Pachter had no express contract, she and her employer did have an "extensive course of dealing for more than 11 years." *Id.* at 618. Second, the Court of the Appeals held that Pachter's contract did not violate Section 193 because the parties "structur[ed] the compensation formula so that Pachter's commission would be deemed earned only after specific deductions were taken from her percentage of gross billings." *Id.* As one court has noted, *Pachter* "[did] not require an employer to identify a specific time when a commission is earned."

*Chenensky v. New York Life Ins. Co.*, No. 7-1150, 2012 WL 234374, at *5 (S.D.N.Y. Jan. 10, 2012). "*Pachter* merely recognizes that if the parties agreed that 'computation of commission will include certain downward adjustments . . . the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula.'" *Id.* (quoting *Pachter*, 10 N.Y.3d at 617).

Accepting the facts pled in the Amended Complaint, and considering the Compensation Documents, the Court finds that Plaintiffs have not (with one exception) plausibly stated a direct wage deduction claim under New York, Jersey, or Connecticut law. That is because, as far as the Court can tell, Plaintiffs impliedly contracted with MSSB, and pursuant to those contracts, MSSB did not (with one exception) make deductions from Plaintiffs' "wages."

1. Implied Contracts

The only plausible way to read the Amended Complaint is to conclude that Plaintiffs entered into implied contracts with MSSB.

In 2008-2013, Plaintiffs worked at MSSB. In those years, "[c]ommission structure [was] announced in the annual MSSB compensation plan" and emailed to Plaintiffs. Compl. ¶¶ 55, 57. Financial advisors had a choice: they could accept the Compensation Policies or "leave MSSB." *Id.* ¶ 68. By remaining at MSSB, Plaintiffs accepted MSSB's compensation package. That manifestation of assent created an implied contract. *See Graff v. Enodis Corp.*, No. 2-5922, 2003 WL 1702026, at *1 (S.D.N.Y. Mar. 28, 2003) ("Here, the policy bulletin concerning the method of calculating commissions is a contract between the parties that Graff, an at-will employee, assented to when he remained in Kysor's employ after receiving it.").

Plaintiffs argue that there was no implied contract because MSSB reserved the right to unilaterally change the terms of the Compensation Policies, but MSSB's reservation did not nullify the contract. *See Kaplan v. Capital Co. of Am.*, 747 N.Y.S.2d 504 (N.Y. App. Div. 2002) ("Although the handbook asserted that the policies and benefits contained therein were not intended to be contractual and were subject to change at any time, this provision was plainly not intended to render the handbook wholly nugatory."). Plaintiffs also point to provisions in the Compensation Policies stating that other, "formal plan documents" would control in the event of a conflict with the Compensation Policies. Pls.' Br. at 10-11, ECF No. 50. If other "formal plan documents" regulated when or how commissions would be paid, the Court would be unable, on a motion to dismiss, to find that the Compensation Policies reflected the totality of Plaintiffs' commission agreement with MSSB. *See Chenensky*, 2012 WL

234374, at *8 (denying summary judgment where "none of the [agreements between the parties] address[ed] the earning of credits and the timing of deductions in a comprehensive way"). MSSB's motion refers to the 2009 Global Wealth Management Group Expense Policy, but Plaintiffs do not allege that any other such "formal plan documents" existed.

2. Deductions for Assistant Compensation

Next, the analysis turns to deductions for assistant compensation made pursuant to the Compensation Policies. Here, MSSB argues that adjustments for assistant compensation were deductions that respected New York, New Jersey, and Connecticut law. Like the deductions in *Pachter*, deductions made pursuant to the BIT and the AFG were built into the formula for a financial advisor's commission. Accordingly, deductions for assistant compensation were made before—not after—Plaintiff's compensation was "earned" or "accrued." *See Pachter*, 10 N.Y.3d at 617-18 ("[If the] computation of a commission . . . include[s] certain downward adjustments from gross sales, billings or receivables . . . the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula."). Accordingly, the Court will **DISMISS** all direct deduction claims based on assistant compensation **WITH PREJUDICE**.

3. Deductions for Trading Errors

Similarly, deductions associated with trading errors in 2009-2013 did not constitute improper deductions under New York, New Jersey, or Connecticut law. Under the Compensation Policies, a financial advisor's compensation was only "earned" or "accrued" at the end of the year. That is because the monthly commission payments were advances subject to retroactive adjustment.[1] The 2009 Global Wealth Management

---

[1] Plaintiffs argue, based on New York Labor Law Section 191(c) ("Section 191(c)") that the monthly payments could not have been advances because they were, in fact, wages. Pls. Br. at 23. The Court disagrees. Section 191(c) provides that

> [a] commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned.

Section 191(c) does not define when compensation becomes earned, and therefore becomes a "wage." The Court notes that Section 191(c) provides that "commissions and all other monies

7

Group Expense Policy and the 2010-2013 Compensation Policies provided that MSSB could make deductions in Plaintiffs' compensation to account for trading losses. Accordingly, trading loss deductions in 2009-2013 were authorized by contract and were made before Plaintiffs' compensation was deemed "earned" or "accrued."

In 2008, however, Plaintiffs' contract with MSSB appears not to have included any mention of trading losses. Accordingly, trading loss deductions in 2008 allegedly violated New York, New Jersey, and Connecticut law. It follows that the Court will **DISMISS WITH PREJUDICE** all direct deduction claims based on trading errors in 2009-2013. The direct deduction claims based on trading errors in 2008 survive.

### B. Indirect Deductions

Plaintiffs "pay for a significant portion of their postage expenses, client and prospective client dinners, and seminars designed to obtain new clients and maintain existing clients." Pl.'s Br. at 8. Plaintiffs argue that these "indirect deductions from wages are improper in exactly the same way that the direct deductions from wages for trading errors or assistants are improper as violations of New York, New Jersey, and Connecticut labor law." *Id.*

#### 1. New York Law (Count III)

Plaintiffs have not alleged a claim for improper indirect wage deductions under New York law.

New York Labor Law Section 193(3) provides that "[n]o employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages . . . ." MSSB argues that Plaintiffs' Section 193(3) claim fails because Plaintiffs do not plausibly allege that they were required to spend money on client dinners and postage. The Court agrees with MSSB. Plaintiffs claim that they were not reimbursed for certain expenditures, but they make no allegation that they were required to incur those

---

earned or payable in accordance with the agreed terms of employment" must be paid at least monthly. Here, Plaintiffs' commissions—the advances on plaintiffs wages—were paid every two weeks. Compl. ¶ 61.

Plaintiffs also argue, based on NJWHL Section 34:11-4.2 ("Section 34:11-4.2"), that Plaintiffs monthly advances must have been "wages" under New Jersey law. Pls.' Br. at 26. Section 34:11-4.2 provides that "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month." Like Section 191(c), Section 34:11-4.2 says nothing about when wages are "earned."

expenditures. Accordingly, the Court will **DISMISS** the indirect wage deduction claim under New York law **WITHOUT PREJUDICE**.

        2.      Connecticut and New Jersey Law (Counts V and VII)

Plaintiffs have not stated a claim for improper indirect wage deductions under Connecticut law or New Jersey law.

When MSSB moved to dismiss the original complaint, it argued—without opposition from Plaintiffs—that Plaintiffs had failed to state a claim for improper indirect deductions under New Jersey and Connecticut law. Accordingly, the Court dismissed with prejudice Plaintiffs indirect deduction claims under Connecticut and New Jersey law. Rather than move for reconsideration, Plaintiffs chose to disregard the Court's instruction and re-allege indirect deduction claims under Section 31-71e and Section 34:11-4.4. Again, MSSB moves to dismiss, arguing that neither Section 31-71 nor Section 34:11-4.4 extend to indirect deduction claims. Again, Plaintiffs do not even attempt to dispute MSSB's arguments.

With explicit exceptions, Section 34:11-4.4 prohibits "withholding or diverting any portion of an employee's wage," and Section 31-71e is similar. As such, the two statutes concern instances in which employers cut into a paycheck for various purposes. The statutes do not concern instances in which employers fail to reimburse employees' expenses. Accordingly, the Court will **DISMISS** the indirect deduction claims under Connecticut and New Jersey law **WITH PREJUDICE**.

## V. CONCLUSION

For the aforementioned reasons, MSSB's motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**.

Count *III* (New York law). The Court will **DISMISS WITH PREJUDICE** all direct deduction claims save the direct deduction claims based on deductions for 2008 trading losses. The Court will **DISMISS WITHOUT PREJUDICE** the indirect deduction claims.

*Counts V and VII* (Connecticut law and New Jersey law). The Court will **DISMISS WITH PREJUDICE** all direct deduction claims save the direct deduction claims based on deductions for 2008 trading losses. The Court will **DISMISS WITH PREJUDICE** the indirect deduction claims.

Plaintiff shall be given 30 days to file an amended pleading addressing only those deficiencies identified in this Opinion. An appropriate order follows.

        /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 4, 2013**