## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE MORGAN STANLEY SMITH BARNEY LLC WAGE AND HOUR LITIGATION**<br><br>**MDL 2280** | Civ. No. 2:11-03121 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      This multidistrict litigation is made up of several putative wage and hour class actions alleging overtime violations and improper wage deductions on the part of Defendants Morgan Stanley Smith Barney LLC and Morgan Stanley & Co., Inc. (together "MSSB"). Now before the Court is MSSB's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Count III of the Third Amended Consolidated Class and Collective Action Complaint (the "TAC"), which alleges impermissible indirect wage deductions under New York law. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, MSSB's motion is **GRANTED**.

      Defendant MSSB is a financial services firm. TAC ¶ 19, ECF No. 74. Plaintiffs are financial advisors who worked at MSSB during the period from 2008-2013. *Id.* ¶ 16. MSSB paid Plaintiffs on a commission basis. *Id.* ¶ 35. As discussed in Plaintiffs' Amended Complaint, Plaintiffs' commissions were set forth in compensation policies (the "Compensation Policies"). Am. Compl. ¶ 55. In its prior opinion, the Court summarized the relevant features of the Compensation Policies. *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 11-3121, 2013 WL 6255697, at *1 (D.N.J. Dec. 4, 2013) ("*MSSB II*"). Under the Compensation Policies, Plaintiffs were permitted to select a formula for their take-home pay. This formula would determine how Plaintiffs monthly advances were calculated. Depending on a Plaintiff's performance, the Compensation Policies provided that these monthly advances could be retroactively adjusted at the end of the year.

      Plaintiffs allege that MSSB required them to develop their own client base. TAC ¶ 50. Plaintiffs further allege that in order to develop a client base, they were "required to pay for certain business expenses that benefited MSSB. *Id.* ¶ 49. These business development expenses included dinners and seminars with clients. *Id.* The Compensation Policies for the relevant years provided that Plaintiffs would receive fixed allowances for these expenses. Peker Aff., Exs. A-F, ECF No. 44. The allowances were based on the revenue a given Plaintiff generated in the previous year. Several of the

1

Compensation Policies explicitly stated that Plaintiffs could receive a greater allowance at the discretion of MSSB.

On February 14, 2012, Plaintiffs filed a ten-count Class and Collective Action Complaint asserting three types of claims: (a) overtime claims under the Federal Fair Labor Standards Act and various state laws; (b) impermissible wage deduction claims under various state laws; and (c) a single state law claim for failing to maintain records. ECF No. 17. Plaintiffs alleged improper direct deductions for assistant compensation and trading losses, and they alleged improper indirect deductions for business development expenses. (The difference between the two kinds of deductions is that a direct deduction involves an employer taking money out of a paycheck while an indirect deduction involves an employer failing to reimburse monies the employee spent). MSSB moved to dismiss one of the state overtime claims, all of the impermissible wage deduction claims, and also the failure to maintain records claim. ECF No. 19. The Court granted the motion, dismissing some counts with prejudice and other counts without prejudice. *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 11-3121, slip op. (D.N.J. Dec. 14, 2012) ("*MSSB I*"), ECF No. 31.

Plaintiffs amended their Complaint and MSSB subsequently moved to dismiss the remaining wage deduction claims, which were pled under New York, Connecticut, and New Jersey law. ECF Nos. 35, 42. The Court dismissed the Connecticut and New Jersey direct and indirect wage deduction claims with prejudice. *MSSB II*, 2013 WL 6255697, at **3-6. As for the New York wage deduction claims, which were pled under Section 193 of the New York Labor Law ("Section 193"), the Court dismissed the direct deduction claim with prejudice, but it dismissed the indirect deduction claim without prejudice. Notably for present purposes, the Court reasoned that the indirect deduction claim could not withstand a motion to dismiss because Plaintiffs failed to allege that they were required to spend their own money on business development expenses. *Id.* at *6.

After the Court issued its opinion, Plaintiffs filed a Second Amended Complaint. ECF No. 60. Subsequently, Plaintiffs were granted leave to file the TAC. In Counts I-II and IV-V, the TAC seeks to recover under federal and state law for overtime violations. In Count III, the TAC seeks to recover under Section 193 for impermissible indirect deductions in the form of unreimbursed business development expenses. Because the TAC alleges that Plaintiffs were required to pay for their own business development expenses, the Court will reach the legal question it did not have to address in its prior opinion, namely whether MSSB made an impermissible indirect deduction from "wages," in violation of Section 193, when MSSB failed to reimburse Plaintiffs' business development expenses. The Court answers that question in the negative.

For present purposes, two subsections of Section 193 are relevant. <u>First</u>, with certain exceptions, Section 193(1) prohibits employers from making direct deductions from employees' wages. <u>Second</u>, Section 193(3) prohibits indirect deductions. Section 193 provides:

> No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or

payment is permitted as a deduction from wages under the provisions of subdivision one of this section . . . .

As discussed in this Court's prior opinion, the term "wage" in Section 193 has a precise meaning. A "wage" is compensation that has been "earned." *MSSB II*, 2013 WL 6255697, at *3 (quoting *Pachter v. Bernard Hodes Group*, 10 N.Y.3d 609, 617 (2008)). The New York Court of Appeals has explained that "[if the] computation of a commission . . . include[s] certain downward adjustments from gross sales, billings or receivables . . . the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula." *Pachter*, 10 N.Y.3d at 617-18 (emphasis added).

In *MSSB II*, the Court held that direct deductions for assistant compensation and trading losses were not deductions from "wages" because the Compensation Policies provided that a Plaintiff's yearly salary formula would only be computed after deductions were made from their monthly advances. In the TAC, Plaintiffs argue that MSSB's failure to reimburse their business expenses violated Section 193(3) because an analogous direct deduction for business expenses would have violated Section 193(1). Defendants counter that this argument conflicts with the Court's holding in *MSSB II*. Specifically, Defendants argue that direct deductions for business development expenses would be similar to direct deductions for assistant compensation and trading errors, which are deductions that the Court has held to be proper under Section 193(1). Rather than dispute this argument, Plaintiffs maintain that the Court must have implicitly rejected the argument since the Court granted Plaintiffs leave to amend their indirect deduction claim. This is incorrect: the Court did not reach the argument in its prior opinion because it did not have to.

Having failed to distinguish the business development expenses from assistant compensation payments, Plaintiffs argue that MSSB violated Section 193 because Plaintiffs did not voluntarily spend their own money on business expenses. But the Court held in *MSSB II* that Plaintiffs agreed to the Compensation Policies by continuing to work at MSSB. *MSSB II*, 2013 WL 6255697, at *5. These Compensation Policies told each Plaintiff how much MSSB would allocate to business development expenses, and some of the Compensation Policies explicitly stated that Plaintiffs could receive a greater allowance if MSSB agreed. If Plaintiffs chose to exceed their allowances in order to build their client base and increase their commission, it is hard to see how they did so involuntarily.

For the above stated reasons, the Court will **DISMISS** Count III **WITH PREJUDICE**. An appropriate order follows.

/s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 20, 2014**

3